IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-1869-WJM-KLM

ARROWS UP, LLC,

    Plaintiff,

v.

WILLIAM R. WEISS ENTERPRISES, INC. d/b/a TNT Sales,

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
FOR LACK OF JURISDICTION AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SUR-REPLY

---

This matter is before the Court on Defendant William R. Weiss Enterprises, Inc. d/b/a TNT Sales, Inc.'s ("TNT") Motion to Dismiss for Lack of Jurisdiction (ECF No. 14), as well as on Plaintiff Arrows Up, LLC's ("AU") Motion for Leave to File a Sur-Reply (ECF No. 38). For the reasons set forth below, Defendant's Motion to Dismiss for Lack of Jurisdiction is granted and Plaintiff's Motion for Leave to File a Sur-Reply is denied.

## I. BACKGROUND

This is a breach-of-contract action brought by Plaintiff AU, a Colorado limited liability company that provides solutions for the delivery and storage of fracking sand. (¶ 6.)[1] Defendant TNT is a Missouri company that sells open-bed trailers. (¶ 9.)

AU uses its own proprietary bins to transport sand. (¶ 7.) Sometime in late

---

[1] Citations to a paragraph number, without more, e.g. (¶ __), are to paragraphs in AU's Amended Complaint (ECF No. 11).

2015, AU's then-affiliate Arrows Up Holdings, Inc. ("AUH"), an Illinois corporation with its principal place of business in Illinois (ECF No. 14-6), contacted TNT in relation to the potential rental of trailers that could be used to transport AU's bins. (¶ 10.) Negotiations ensued which culminated in the parties entering into several rental agreements ("Agreements"), with rental periods beginning variously from June 2017 to January 2018. (¶ 17.) At least five of the Agreements "were intended" for a Colorado-based company, AP Logistics. (¶ 19.)

In August 2016, during the parties' negotiation of the Agreements, AU formed and was registered by the Colorado Secretary of State as a Colorado limited liability company, with its principal place of business in Illinois. (ECF No. 14-7.) At the time of its formation, AU was jointly owned by AUH and OmniTRAX Sand Holdings, LLC ("OSH").[2] (ECF No. 29-1 at 2, ¶ 7.) OSH is a Colorado corporation based in Denver, Colorado. (¶¶ 2, 14.)

Thereafter, according to Plaintiff, "TNT was made aware that it was no longer dealing with [AUH], but with AU and [OHS], in particular, through Mr. Zenon Mykytyn and Ms. Tina Allison." (¶ 15.) During negotiation of the Agreements, "TNT made numerous phone calls to and exchanged hundreds of emails with employees of AU and [OHS][.]" (¶ 14.) "Mr. Mykytyn and Ms. Allison on behalf of AU and [OHS] regularly exchanged emails with Mr. William Weiss and Mr. Thomas Dilly," who were TNT

---

[2] Plaintiff's Amended Complaint suggests that AUH is still a member of AU. (¶ 2.) The Declaration of Anthony Guillen, however, submitted by Plaintiff, states that "OSH recently bought out AUH[ ]'s interest in AU, thereby leaving OSH as the sole owner of AU." (ECF No. 29-1 at 2 ¶ 8.) For purposes of Defendant's Motion to Dismiss, the Court finds the difference to be immaterial.

representatives. (¶ 16.) Mykytyn's e-mail signature shows a Denver address and a phone number with a Colorado area code. (*See, e.g.*, ECF No. 14-10 at 2.)

After the rental periods began, AU began to notice significant problems with the trailers. (¶ 23.) Despite AU's proper maintenance of the trailers, "the trailers' frames began to crack and otherwise fail." (¶ 24.) TNT cast the blame on AU. (¶ 26.) Between late 2018 and early 2019, AU returned the rented trailers to TNT. (¶ 28.)

AU filed its operative Amended Complaint on September 3, 2019, bringing claims against TNT for breach of contract and breach of implied warranty, among others. (¶¶ 32–47.) TNT filed its Motion to Dismiss for Lack of Jurisdiction on September 13, 2019, arguing that the Court may not assert personal jurisdiction over it. (ECF No. 14.) Defendant also argues that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(3) for improper venue, and alternatively, that this case should be transferred to the U.S. District Court for the Eastern District of Missouri under 28 U.S.C. § 1404(a). (*Id.*) AU filed a Response on September 26, 2019 (ECF No. 29), and on October 18, 2019, TNT filed a Reply (ECF No. 36).

On November 18, 2019, AU filed its Motion for Leave to File a Sur-Reply (ECF No. 38), and on November 20, 2019, TNT filed a Response (ECF No. 41).

## II. LEGAL STANDARDS

### A.   Rule 12(b)(2) Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction, and may satisfy this burden by making a *prima facie* showing that personal jurisdiction over the defendants obtains. *Dudnikov v. Chalk &*

*Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id*. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor." *Id*.

B.  **Rule 12(b)(3) Motion to Dismiss**

"Once venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district." *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019). "At the motion to dismiss stage, a plaintiff must present only a prima facie showing of venue." *Id.*

"[I]n reviewing a defendant's Rule 12(b)(3) motion to dismiss for improper venue, the Court may examine facts outside of the complaint and must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* "Specifically, the Court must accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits." *Id.* "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal quotation marks omitted).

C.  **Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

28 U.S.C. § 1404(a). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Id.* (internal quotation marks omitted).

### III. ANALYSIS

**A.    AU's Motion for Leave to File a Sur-Reply**

AU seeks leave to file a sur-reply to TNT's Motion to Dismiss, on the basis that TNT introduced new information in its Reply (ECF No. 36). In particular, TNT asserted that, in a case in the U.S. District Court for the Southern District of Texas, AU represented to the court that its principal place of business was in Illinois. The Court will not consider this newly introduced information in ruling on TNT's Motion to Dismiss, and a sur-reply would therefore be unnecessary. Accordingly, AU's Motion for Leave to File a Sur-Reply will be denied.

**B.    Personal Jurisdiction**

TNT argues that the Court lacks personal jurisdiction over it, and the Court agrees.

"To obtain personal jurisdiction over a nonresident defendant, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Colorado's long arm statute confers personal jurisdiction to the maximum extent

permitted by the Fourteenth Amendment. *Dudnikov*, 514 F.3d at 1070 (citing *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)). Thus, the Court maintains personal jurisdiction over TNT to the extent that doing so is consistent with due process. *Dudnikov*, 514 F.3d at 1070.

"[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Corp. v. Washington*, 326 U.S. 310, 316 (1945)). "A court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090–91 (10th Cir. 1998) (internal quotation marks omitted; emphasis in original). A court may also exercise "general" personal jurisdiction over a defendant, where jurisdiction is not related to the events giving rise to the suit, if the defendant's "affiliations with the State are so continuous and systematic so as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (internal quotation marks omitted).

As an initial matter, AU suggests that, simply because AU is organized under Colorado law, any of TNT's contacts with AU constitute contacts with Colorado. (ECF No. 29 at 5.) In making this argument, AU glosses over the crucial and undisputed fact that, at all relevant times, AU's (and AUH's) principal place of business was in Illinois. (*See* ECF Nos. 14-2, 14-3, 14-4, 14-8.) While AU states in its Amended Complaint that its principal place of business is in Colorado, it is undisputed that AU only filed to make

6

such a change with the Colorado Secretary of State on September 4, 2019—shortly *after* TNT filed its motion to dismiss AU's original complaint for lack of personal jurisdiction (ECF No. 9). This kind of after-the-fact change of residency has very little bearing, if any, on the assessment of the sufficiency of TNT's Colorado contacts. *See Rambo v. Am. So. Ins. Co.*, 839 F.2d 1415, 1420 (10th Cir. 1988).

The parties' relationship began when AUH, an Illinois corporation based in Illinois, contacted TNT. There is no reason to believe that TNT had any relevant contacts with Colorado until, at the very earliest, AU was formed as a Colorado limited liability company. AU asserts that, at some unspecified point thereafter, TNT was informed that it was no longer dealing with AUH, but rather with AU and OHS, and that Mykytyn (the Colorado-based agent of OHS) became TNT's primary contact with respect to the parties' contract negotiations. (ECF No. 29-1 at 2, ¶ 10.) The affidavit of Thomas Dilly, the vice president of TNT, asserts that Mykytyn was not inserted into the parties' negotiations until August 2017. (ECF No. 15 at 2, ¶ 7.) AU does not dispute this assertion, and accordingly the Court will accept it as true. By August 2017, at least two Agreements were already in force, having been executed without the involvement of Mykytyn or, on the face of the allegations, any other Colorado resident. (ECF No. 11-3.)

While AU alleges that TNT "regularly" communicated with Mykytyn, the mere fact that TNT began communicating with *one* Colorado resident near the end of the parties' negotiations, is not enough for the Court to hold that TNT, after two years of negotiating with Illinois residents, should reasonably have anticipated being haled into a Colorado court. The vagueness of that allegation, moreover, renders it of limited probative value.

7

*See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991). Accordingly, the Court concludes that TNT's communications with Mykytyn alone do not constitute sufficient contacts with Colorado such that this Court's exercise of jurisdiction over TNT would be in harmony with due process. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020).

AU also points out that, in at least some of the Agreements, a Colorado address is listed as being attributable to AU, under the heading, "Additional Insured." However, on the top of the first page of each Agreement, a non-Colorado (Illinois or North Carolina) address is provided under the more general heading, "Customer." The fact that TNT may have been on notice that AU was insured in or otherwise had *some* affiliation with Colorado is not enough to subject it to this Court's jurisdiction; the same can be said about the fact AU was organized under Colorado law. *See id.* That AU had some form of an affiliation with Colorado does not necessarily mean that TNT's communications with AU were directed toward Colorado, especially in light of AU's far more substantial connection to Illinois.

AU further points to two of its own unilateral acts directed toward TNT from Colorado as evidence of TNT's Colorado contacts: the fact that payments AU made to TNT under the Agreements originated in Colorado, and that a majority of the Agreements were signed by Hubert Gasser, a manager of AU and the CFO of OHS, who is based in Denver. But these are Colorado contacts that AU unilaterally imposed on TNT; they do not reflect the purposeful availment of the benefits of doing business in Colorado *by the Defendant*, which due process requires to render TNT amenable to the burden of litigating in this state. *See Monge v. RG Petro-Machinery (Group) Co. Ltd.*,

701 F.3d 598, 618–20 (10th Cir. 2012).

Finally, AU asserts that "[a]t least five Agreements were intended for a Colorado customer—AP Logistics, LLC[.]" (¶ 19.) It is not clear what exactly this means, and the operative complaint does not allege anything further with respect to AP Logistics. Accordingly, the Court cannot determine whether and to what extent TNT's dealings with AP Logistics constitute Colorado contacts out of which AU's claims in this matter arose.

Thus, for the reasons set forth above, the Court concludes that it may not assert personal jurisdiction over TNT in regard to the present claims.

**B.    Venue**

The question remains whether this case should be dismissed or, if in the interests of justice, transferred to a different venue. *See* 28 U.S.C. § 1631; *Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006). In its Motion to Dismiss, TNT summarily asserts that "[t]he affidavits and exhibits thereto establish that an insubstantial part of the alleged acts and omissions giving rise to [AU]'s claims occurred in Colorado." (ECF No. 14.) As such, TNT argues, dismissal under Rule 12(b)(3), and/or transfer to the U.S. District Court for the Eastern District of Missouri is appropriate under 28 U.S.C. § 1404.

In the absence of more thorough argument, the Court is unable to conclude that the interests of justice require a transfer of venue. Thus, TNT's Motion to Dismiss, to the extent it requests a transfer of venue to another court, will be denied. *See* 28 U.S.C. § 1404(a); *id.* § 1631; *Trujillo*, 465 F.3d at 1223.

## IV.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1. Plaintiff AU's Motion for Leave to File a Sur-Reply (ECF No. 38) is DENIED;

2. Defendant TNT's Motion to Dismiss for Lack of Jurisdiction (ECF No. 14) is GRANTED; and

3. Plaintiff AU's claims against TNT are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction; and

4. The Clerk of Court shall enter judgment accordingly and shall terminate this case.

Dated this 12th day of May, 2020.

BY THE COURT:

William J. Martínez
United States District Judge